## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

| | |
|---|---|
| THE EQUAL RIGHTS CENTER<br>11 Dupont Circle, N.W., Suite 450<br>Washington, D.C.  20036, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )      Civil No. _____ |
| ABERCROMBIE & FITCH CO.;<br>ABERCROMBIE & FITCH STORES, INC.; and<br>J.M. HOLLISTER, LLC, d/b/a HOLLISTER CO.<br>6301 Fitch Path<br>New Albany, OH 43054, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

_____ )

## COMPLAINT

## INTRODUCTION

1.      Plaintiff The Equal Rights Center ("ERC"), by counsel, brings this action for declaratory judgment, injunctive relief and damages against defendants Abercrombie & Fitch Co.; Abercrombie & Fitch Stores, Inc.; and J.M. Hollister, LLC, d/b/a Hollister Co. ("Defendants") because Defendants maintain policies and engage in practices that result in stores that are inaccessible to persons with disabilities, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181, *et seq.* (1994) ("ADA") and the District of Columbia Human Rights Act, D.C. Code Ann. §§ 2-1401, *et seq.* (2001) ("DCHRA").

2.      Defendant Abercrombie & Fitch Co. is a retailer that sells casual sportswear apparel under the Abercrombie & Fitch ("A&F"), abercrombie, Hollister Co.

("Hollister"), Ruehl No. 925 and Gilly Hicks brand names.  Abercrombie & Fitch Co. is the ultimate parent company of the other Defendants in this case.

3.       The Hollister brand is designed to attract consumers aged 14-18 through its Southern California, or "So-Cal," inspired image and casual wear.  Hollister was ranked as the second most preferred teen clothing brand in 2008 in a survey conducted by investment bank Piper Jaffray.

4.       The A&F brand offers casual wear designed for the college-aged lifestyle, targeting consumers aged 18-22.  Its merchandise price points are recognized as the highest in the youth clothing industry.

5.       According to Abercrombie & Fitch Co.'s March 2009 form 10-K submitted to the Securities and Exchange Commission and available on its website:

> The Company's in-store marketing is designed to convey the principal elements and personality of each brand.  The store design, furniture, fixtures and music are all carefully planned and coordinated to create a shopping experience that reflects the Abercrombie & Fitch . . . [or] Hollister . . . lifestyle.

6.       Abercrombie & Fitch Co.'s stated "lifestyle" excludes individuals with disabilities.  Defendants deny equal access to individuals with disabilities, including members of the ERC, by their policies and practices of designing, constructing and maintaining Hollister and A&F stores in a manner that is not accessible to individuals with disabilities.  Defendants routinely deny persons with mobility impairments the ability to enter and to navigate around their stores with the same ease and dignity as customers without disabilities.

7.      As a result of reports of complaints, and in order to learn the full extent of Defendants' violations, the ERC undertook a survey of the accessibility of Hollister and A&F stores.  The ERC investigated stores in Maryland and the District of Columbia, as well as stores in Illinois, Indiana, Massachusetts, New Jersey, New York, Ohio, Virginia and Wisconsin.

8.      The ERC found accessibility barriers at every Hollister and A&F store it surveyed throughout the United States.  The most serious barriers included: inaccessible main entrances, inaccessible service counters, inaccessible interior paths of travel and inaccessible merchandise displays.

9.      Upon information and belief, Defendants' continued, widespread failure to provide accessibility at their stores is the result of common design features, policies and practices.  Abercrombie & Fitch Co. specifically admits, in its March 2009 SEC form 10-K, the following:

> Every brand displays merchandise uniformly to ensure a consistent store experience, regardless of location.  Store managers receive detailed plans designating fixture and merchandise placement to ensure coordinated execution of the Company-wide merchandising strategy.

10.     These policies and practices deprive persons with disabilities of the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Hollister and A&F stores.

11.     Defendants' "planned and coordinated" erection, maintenance and allowance of physical barriers within their stores demonstrate not only a marked disregard for the needs of individuals with disabilities, but also active discrimination on the basis of disability.

12.     Defendants have had full prior notice that the issues alleged in this Complaint violate the ADA.  The ERC has received reports that Defendants have failed to remedy their discriminatory policies, practices and procedures, despite the repeated requests of organizations of people with disabilities that they do so.

13.     Plaintiff alleges that Defendants' discriminatory policies and practices violate the ADA and the DCHRA.

14.     Accordingly, Plaintiff requests that the Court: (i) declare unlawful Defendants' policies and practices of denial of access to and through their stores to persons with disabilities under the ADA and the DCHRA, where applicable; (ii) require Defendants to modify their practices, policies and procedures to comply with the ADA and the DCHRA; (iii) require Defendants to remove architectural barriers at Defendants' Hollister and A&F stores; and (iv) enter a judgment for compensatory and punitive damages, as well as costs and attorneys' fees, and such other relief as this Court deems just and proper.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts a claim under the Americans with Disabilities Act of 1990, Pub. L. 101-335, 104 Stat. 327 (codified at 42 U.S.C. §§ 12101-12213).

16.     This Court has supplemental jurisdiction over the D.C.-based claim pursuant to 28 U.S.C. § 1367 because Plaintiff asserts claims under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01 to 1431.08, which are so related

to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

17.    This Court has personal jurisdiction over Defendants because Defendants are present in and regularly conduct business in the state of Maryland and in this judicial district.

18.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district and because Defendants reside in this district.

## PARTIES

19.    Plaintiff The Equal Rights Center ("ERC") is a national not-for-profit organization organized under the laws of the District of Columbia, with its principal place of business at 11 Dupont Circle, N.W., Suite 450, Washington, D.C. 20036.  The ERC's membership consists, in part, of persons with disabilities who live throughout the nation and others who are committed to, *inter alia*, equal rights, equal access and equal opportunity for persons with disabilities.  One of the principal goals of the ERC is the promotion of equal access for people with disabilities.  The ERC pursues this goal through various means, including research, outreach and education, counseling, advocacy and enforcement.  The ERC brings this case on its own behalf and as a representative of its members, whose right to live in and enjoy a community free from discrimination on the basis of physical disability has been infringed by Defendants.  The ERC also brings this case because it has been damaged by the frustration of its mission, and by having to divert resources that the ERC would have used to provide counseling, outreach and

education, and referral services.  Instead, the ERC has devoted resources to identifying and investigating Defendants' discriminatory policies and practices.

20.     Defendant Abercrombie & Fitch Co. is a Delaware corporation with its principal place of business at 6301 Fitch Path, New Albany, OH 43054.  Abercrombie & Fitch Co., through its five brands, is a specialty retailer of casual sportswear apparel for men, women, and teenagers.  Through Defendant Abercrombie & Fitch Stores, Inc., the company operates 1,125 stores and employs over 10,000 full-time employees across all five brands.   At the close of its fiscal year ending January 31, 2009, Defendant Abercrombie & Fitch Co. reported total revenue over $3.5 billion, gross profits exceeding $2.3 billion and net income of $272,225,000.

21.     Defendant Abercrombie & Fitch Stores, Inc. is an Ohio corporation with its principal place of business at 6301 Fitch Path, New Albany, OH  43054.  Abercrombie & Fitch Stores, Inc. operates clothing stores throughout the United States under the various Abercrombie & Fitch brands, including in Maryland and the District of Columbia.  In addition to the Hollister stores in Maryland, Defendant Abercrombie & Fitch Stores, Inc. has stores in Maryland and the District of Columbia operating under the names "Abercrombie & Fitch" ("A&F") and "abercrombie."   Abercrombie & Fitch Stores, Inc. operates at least  five "A&F" stores in Maryland and the District of Columbia.

22.     Defendant J.M. Hollister, LLC d/b/a Hollister Co. ("Hollister") is an Ohio limited liability company that is wholly owned by Defendant Abercrombie & Fitch Stores, Inc., its sole member, and does business as "Hollister Co."  Hollister has its principal place of business at 6301 Fitch Path, New Albany, OH 43054, and its registered

Maryland business address is White Marsh Mall, 8200 Perry Hall Boulevard, Baltimore, MD 21236.  There are twelve "Hollister" stores in the state of Maryland.

## FACTS

### Equal Rights Center's Investigation of
### Accessibility Barriers at Abercrombie & Fitch Co. Stores.

23.    After receiving reports of complaints from individuals with disabilities who had been denied access to Defendants' stores across the country, the ERC diverted a portion of its scarce resources to perform an accessibility survey of Hollister and A&F stores.

24.    The ERC investigated Hollister stores in Maryland, as well as stores in Illinois, Indiana, Massachusetts, New Jersey, New York, Ohio, Virginia and Wisconsin, and an A&F store in the District of Columbia.

25.    The ERC investigation revealed that Hollister and A&F stores across the nation contain barriers that prevent wheelchair users and other people with disabilities from accessing goods and services, and that violate Appendix A of the Department of Justice regulations implementing Title III of the ADA, the <u>Standards for Accessible Design</u> ("Standards").   The most serious of these barriers include, but are not limited to:

a.   <u>Entrance</u>:   Entrances used by the majority of customers visiting the buildings that are not accessible, in violation of Standard 4.1.3(8)(a)(iii), and lack of signage at the inaccessible entrances directing customers to the nearest accessible entrance, in violation of Standard 4.1.3(8)(d).

b.   <u>Service Counters</u>:   Service counters that exceed the maximum height allowance, in violation of Standard 7.2(1).

    c. <u>Paths of Travel</u>:  Paths of travel that are too narrow due to temporary blockage, and which thereby prevent access through the facilities for individuals who use wheelchairs or scooters, including, but not limited to, access to merchandise aisles and displays, in violation of Standard 4.3.

    d. <u>Merchandise Displays</u>: Fixed self-service merchandise displays that are not located on an accessible route, in violation of Standards 4.1.3(12)(b) and 4.3.

26.    The ERC surveyed the accessibility of four Hollister stores located in the state of Maryland at: 7101 Democracy Boulevard, Bethesda, MD; 5500 Buckeystown Pike, Frederick, MD; 701 Russell Avenue, Gaithersburg, MD; and 7900 Governor Ritchie Highway, Glen Burnie, MD.

27.    In one of the Hollister stores surveyed in the state of Maryland, the ERC found that the main entrance is inaccessible to persons who use wheelchairs or scooters for mobility.   This main entrance consists of steps leading up to a porch-like platform that has chairs, advertising and merchandise displayed on it.

28.    In the store with an inaccessible main entrance, located at 7900 Governor Ritchie Highway, Glen Burnie, MD, individuals who use wheelchairs or scooters are required to use a segregated door located away from the main entrance used by the general public.

29.    In the Glen Burnie store, there is no International Symbol of Accessibility on the main public entrance identifying the presence of, and providing direction to, any accessible entrance.   In this store, there is a small, difficult to find, symbol of accessibility on a door opener button in the vicinity of the segregated entrance.

30.     The ERC survey found that the segregated door at the Glen Burnie store is kept locked by Defendants during normal business hours, completely excluding individuals who use wheelchairs or scooters for mobility from accessing the store and its goods, services, facilities, privileges, advantages, or accommodations.

31.     Customers who can use the steps take advantage of the amenities provided on the elevated porch, and they have a choice of whether to enter the young men's side of the store (known as "Dudes") or the young women's side (known as "Bettys"). Customers must descend two steps from the platform to the store floor.

32.     Customers who use wheelchairs or scooters cannot take advantage of the amenities provided on the elevated porch.  Even if the segregated door were unlocked, they must enter from the "Dudes" side of the store where the segregated entrance is located.

33.     Stores are laid out in a series of consecutive rooms for each gender, intersected by a large central room with a service counter.  In three out of four of the stores surveyed in the state of Maryland, there is no accessible route between the Dudes and Bettys sides of the stores in the front room of the stores.  Customers in wheelchairs must travel to the back room of the store, often through the line of customers at the service counter, to cross to the other gender's side.

34.     All four of the Hollister stores surveyed in the state of Maryland have inaccessible service counters that are too high for customers who use wheelchairs to reach or use, and do not have a lowered portion of the counter that is accessible to people with disabilities.

35.     All four of the Hollister stores surveyed in the state of Maryland have inaccessible interior paths of travel.   The interiors of the stores are arranged with merchandise, furniture and plants that impede access through the store for persons with disabilities.

36.     Much of the merchandise in Hollister stores is displayed on fixed wall shelving, which is designed for self-service.   In all of the stores surveyed in the state of Maryland, there are merchandise, furniture and plants blocking access for customers who use wheelchairs or scooters to between 32% and 60% of the wall shelving.

37.     The ERC surveyed the only A&F store located in the District of Columbia, at 1208 Wisconsin Avenue, Washington, D.C.  The ERC found that there is no accessible entrance to this store.  Customers enter through the front doors onto a raised platform.   Customers must descend one step from the platform to the store floor.   There is no alternative, accessible entrance for individuals who use wheelchairs or scooters for mobility.   Thus, individuals who use wheelchairs or scooters are completely excluded from entering the A&F store.

38.     Further, this A&F store has inaccessible interior paths of travel and has merchandise, furniture and plants blocking access to over 78% of the wall shelving.

39.     The ERC also surveyed Hollister stores in Illinois, Indiana, Massachusetts, New Jersey, New York, Ohio, Virginia and Wisconsin.  Over 87%, or seven out of eight, of the stores surveyed have inaccessible main entrances.  In over 87%, or seven out of eight, of the stores surveyed, there is no accessible route between the Dudes and Bettys sides of the stores in the front room of the stores and customers must travel to at least the center of the store to cross to the other gender's side.  All eight of the stores surveyed

have inaccessible service counters.  All eight of the stores surveyed have inaccessible interior paths of travel.  All eight of the stores surveyed have merchandise, furniture and plants blocking access to between 42% and 62% of the wall shelving.

40.     Upon information and belief, every Hollister and A&F store inspected by the ERC includes one or more of the access barriers described in Paragraph 25 above.  As a result, these stores violate the ADA and its implementing regulations and Standards. Additionally, based on these same barriers and conditions, the one A&F store located within Washington, D.C. also violates the DCHRA.

**Defendants' Responsibility for Access Barriers in Abercrombie & Fitch Co. Stores**

41.     Upon information and belief, virtually all significant business decisions across the various Abercrombie & Fitch brands, including store design decisions, are made from the Ohio headquarters of the Abercrombie & Fitch companies, which include the entities named as Defendants herein.

42.     Upon information and belief, the access barriers at Hollister and A&F stores are the result of a common design or designs dictated by Defendants' corporate policies, practices or procedures and/or absence of corporate policies, practices and procedures relating to compliance with the ADA and DCHRA, where applicable.

43.     Modification of Defendants' policies, practices and procedures to ensure full and equal enjoyment of Hollister and A&F stores would not constitute a fundamental alteration of the nature of Defendants' goods, services, facilities or accommodations. Therefore, by their failure to modify their policies, practices and procedures, Defendants have violated and continue to violate the ADA and DCHRA.

44.     Through their ownership and control of operations, Defendants have the capacity and authority to modify their policies, practices and procedures to comply with the ADA and DCHRA, and to eliminate barriers at each Hollister and A&F store.

45.     Upon information and belief, all Hollister stores were designed and constructed for first occupancy after the effective date of the ADA.  Defendants modified Hollister sites they leased by building steps at the entrances.

46.     Removal of access barriers identified at Defendants' stores is readily achievable and is therefore required by law.

47.     As a result, by their policies and practices that fail to maintain stores that comply with the ADA and the DCHRA, where applicable, Defendants have violated and continue to violate the ADA and the DCHRA.

<u>**Plaintiff Has Been Injured By Defendants' Discriminatory Conduct**</u>

48.     As a result of Defendants' continuing failure to modify their policies, practices and procedures to provide accessible main entrances, merchandise aisles, service counters, merchandise displays and other elements of their facilities, as required by the ADA and the DCHRA where applicable, Plaintiff ERC has suffered and will continue to suffer injury including, but not limited to:

    a.   the frustration of the mission of The ERC to achieve equality of access for persons with mobility impairments and the elimination of discrimination against persons with disabilities in public accommodations; and

    b.   the diversion of The ERC's resources necessary to identify and counteract Defendant's unlawful discriminatory practices; and

c.   interference with the interests of The ERC and its members in protecting their rights to live in and enjoy a community that is free from discrimination on the basis of physical disability.

**Injunctive Relief is Necessary and Appropriate**
**To Protect the Rights of the Plaintiff**

49.   Defendants' failure to modify their policies, practices and procedures to ensure full and equal enjoyment of their stores by people with disabilities, and to provide accessible main entrances, merchandise aisles, service counters, merchandise displays and other elements as required by the ADA, denies persons with disabilities the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Hollister and A&F stores, and subjects persons with disabilities to discrimination.

50.   Defendants' failure to provide an accessible entrance and accessible merchandise aisles, service counters, merchandise displays and other elements, denies persons with disabilities the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of the A&F store in Washington, D.C., in violation of the DCHRA.

51.   Plaintiff has reasonable grounds to believe that Hollister and A&F stores will continue to fail to provide accessible entrances, merchandise aisles, services counters, merchandise displays and other elements as required by the ADA and DCHRA, and that therefore Plaintiff ERC and its members will be subjected to continuing discrimination in violation of the ADA and the DCHRA.

52.     Plaintiff has no plain, adequate or complete remedy at law.  Plaintiff ERC and its members have suffered, are suffering, and will continue to suffer irreparable injury as a result of Defendants' continuing discriminatory conduct.

### FIRST CLAIM FOR RELIEF
### Violation of the Americans with Disabilities Act

53.     Plaintiff incorporates by reference each allegation contained above as if fully set forth herein.

54.     At all times relevant to this action, the ADA was in full force and effect in the United States.

55.     On July 12, 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," including discrimination resulting from "the discriminatory effects of architectural . . . barriers. . . ." 42 U.S.C. § 12101(b)(1) & (a)(5).

56.     Hollister and A&F stores are "places of public accommodation" within the meaning of Section 302(a) of the ADA (codified at 42 U.S.C. § 12182(a)). 42 U.S.C. § 12181(7)(E).

57.     Defendants are "private entit[ies] who own[], lease[] (or lease[] to), or operate[] a place of public accommodation," and therefore have obligations under Title III of the ADA.  42 U.S.C. § 12182(a).

58.     Plaintiff ERC is an organization whose mission includes achieving equality of access for persons with mobility impairments and the elimination of discrimination against persons with disabilities in public accommodations.   ERC members include persons with disabilities within the meaning of the ADA.

**Architectural and Structural Barriers in Violation of the ADA**

59.     The ADA prohibits discrimination against persons with disabilities.  The ADA provides, in pertinent part, that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

60.     Defendants' stores contain structural and other barriers to accessibility for persons with disabilities in violation of the ADA.  These violations include, but are not limited to: inaccessible main entrances to the stores due to stairs and other barriers, inaccessible service counters, inaccessible fixed shelving, and other elements.

61.     The access barriers at Hollister and A&F stores constitute unlawful discrimination on the basis of disability because they deny disabled individuals, including ERC members, the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations provided by Hollister and A&F stores, and as such, Defendants violate the ADA.  42 U.S.C. § 12182(a).

62.     Title III of the ADA requires places of public accommodation to design and construct facilities built after the effective date of the ADA in conformance with the Standards, to the extent that such is not structurally impractical.  42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406.

63.     Upon information and belief, all Hollister stores were designed and constructed for first occupancy after the effective date of the ADA.  Defendants' failure to design and construct their stores in conformance with the Standards violates the ADA

because design and construction of stores that conformed with the Standards would not have been structurally impractical.

64.     Title III of the ADA requires places of public accommodation to remove architectural barriers in existing facilities where barrier removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv).  Measures taken to remove architectural barriers must comply with the Standards unless it would not be readily achievable to do so.  28 C.F.R. § 36.304(d).

65.     Defendants' failure to remove architectural barriers at their entrances and store floors violates the ADA because removal of these barriers is readily achievable and is required by the ADA.

66.     The ADA also prohibits public accommodations from providing individuals with disabilities goods, services, facilities, privileges, advantages, or accommodations that are different or separate from those provided to other individuals, unless doing so is necessary to the provision of the goods, services, facilities, privileges, advantages, or accommodations in question.  42 U.S.C. § 12182(b)(1)(A)(iii).

67.     Defendants' practice of requiring that persons with disabilities use a segregated entrance to enter it stores does not provide the same level of independent, convenient and dignified entry provided to other members of the public, in violation of the ADA.  42 U.S.C. § 12182(b)(1)(A)(ii) & (iii).  Defendants' practice of denying persons with disabilities any access to their stores located in Glen Burnie, Maryland, and the District of Columbia clearly does not provide the same level of independent, convenient and dignified entry provided to other members of the public.

**Reduction in Access in Violation of the ADA**

68.     Defendants' modifications of the facilities in which they opened their Hollister stores, by designing and constructing inaccessible entrances used by the majority of people visiting the stores, constitute violations of the ADA in that they resulted in alterations that decreased access to persons with disabilities.

69.     The ADA requires a place of public accommodation to make alterations to its facility "in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(2).

70.     The U.S. Department of Justice regulations to Title III of the ADA require that "[a]ny alteration to a place of public accommodation or a commercial facility, after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 28 C.F.R. § 36.402(a)(1).

71.     The Standards prohibit alterations to existing buildings by prohibiting alterations that "decrease, or [have] the effect of decreasing accessibility or usability of a building or facility below the requirements for new construction at the time of alteration." Standards § 4.1.6(1)(a), 28 C.F.R. pt. 36, App. A.

72.     The construction of stepped main entrances at Hollister stores decreased the accessibility of the stores below the requirements for new construction.   The Standards require that, where feasible, entrances used by the majority of people visiting the building be accessible.   Standards § 4.1.3(8)(a)(iii).   Clearly, this Standard is not met at Hollister stores with stepped entrances.   Therefore, these alterations do not meet the

ADA's mandate that alterations must enhance accessibility for people with disabilities, and conflict with the prohibitions in the Title III regulation and the Standards against alterations that decrease accessibility or usability of a public building. 28 C.F.R. § 36.402(a)(1); 28 C.F.R. pt. 36, App. A.

### Failure to Maintain Accessible Features in Violation of the ADA

73.     The U.S. Department of Justice regulations to Title III of the ADA require that places of "public accommodation [] maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities," unless the interruption in service or access is isolated or temporary or due to maintenance or repairs.  28 C.F.R. § 36.211(a).

74.     Upon information and belief, Defendants have failed to maintain accessible features at their stores, including accessible paths of travel and accessible entrances.  Such failure has been prevalent and consistent, and is not due to maintenance or repairs, but rather to corporate policies or practices, or the lack thereof, relating to accessibility for people with disabilities.

### Failure to Make Reasonable Modifications to Policies in Violation of the ADA

75.     Upon information and belief, the access barriers outlined herein are the result of Defendants' policies, practices, or procedures and/or the absence of policies, practices or procedures for enforcing the ADA.   These "policies, practices, or procedures" impose barriers to access within the meaning of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii), throughout Hollister and A&F stores.  These policies, practices and procedures include, but are not limited to:

> a. approval of standardized entrances, counters and equipment that are inaccessible to wheelchair users;

b.  failure to maintain accessible features, such as accessible paths of travel through merchandise aisles and accessible entrances; and

c.  failure to ensure that other elements of stores, such as merchandise displays, meet the requirements of the ADA and are accessible to customers with disabilities.

76.     Pursuant to the ADA, places of public accommodations must "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . ." 42 U.S.C. § 12182(b)(2)(A)(ii). Defendants' failure to make reasonable modifications to policies, practices, or procedures necessary to afford individuals with disabilities access to the facilities, goods and services of their stores violates the ADA and irreparably injured Plaintiff ERC.

77.     Modification of Defendants' policies, practices and procedures will not fundamentally alter the nature of Defendants' goods, services, facilities, privileges, advantages or accommodations.

78.     Defendants' failure to comply with the ADA has resulted and will continue to result in harm to Plaintiff and other individuals with disabilities, unless and until Defendants are ordered by this Court to make modifications to their stores and their policies, practices and procedures pursuant to the ADA and Standards.

## SECOND CLAIM FOR RELIEF
## Violation of the District of Columbia Human Rights Act

79.     Plaintiff incorporates by reference each allegation contained above as if fully set forth herein.

80.     At all times relevant to this action, the DCHRA was in full force and effect in Washington, D.C.

81.     The A&F store located in the District of Columbia is a "place of public accommodation" within the meaning of the DCHRA, D.C. Code § 2-1401.02(24), and Defendants are owners of a place of public accommodation within the meaning of the DCHRA.  D.C. Code § 2-1401(20)(A).

82.     Plaintiff ERC is an aggrieved person within the meaning of the DCHRA. D.C. Code § 2-1401.02(21).

83.     The DCHRA makes it an unlawful discriminatory practice to "deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations" "wholly or partially for a discriminatory reason based on the actual or perceived . . . disability . . . of any individual." D.C. Code § 2-1402.31(a)(1).

84.     The DCHRA further provides that "[a]ny practice which has the effect or consequence of violating any of the provisions of [the DCHRA] shall be deemed to be an unlawful discriminatory practice." D.C. Code § 2-1402.68.

85.     Defendants have violated and continue to violate the DCHRA because the inaccessibility of the District of Columbia A&F store and their practices, *inter alia*, have the effect or consequence of denying individuals with disabilities, including Plaintiff and its members, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the District of Columbia A&F store.

86.     Defendants' conduct has harmed Plaintiff and will continue to harm Plaintiff unless and until Defendants are ordered by this Court to make the A&F store in Washington, D.C. accessible to individuals who use wheelchairs for mobility and other individuals with disabilities.

87.     For their violations of the DCHRA, and in accordance with D.C. Code § 2-1401.03.16(b), Defendants are liable to Plaintiff for compensatory damages, punitive damages, and costs and attorneys' fees in amounts to be determined at trial, and all other available relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ERC respectfully prays that this Court:

(1)     Declare the acts and omissions of Defendants complained of herein to be in violation of the ADA and the DCHRA;

(2)     Enter a preliminary and permanent injunction requiring Defendants to: (i) modify their policies, practices and procedures to comply with the ADA and DCHRA and (ii) remove architectural barriers at their Hollister and A&F stores;

(3)     Enter judgment awarding Plaintiff compensatory damages under the DCHRA in an amount appropriate to the proof at trial;

(4)     Award Plaintiff its costs and attorneys' fees, including litigation expenses, reasonably incurred in the prosecution of the action; and

(5)     Award Plaintiff such other and further relief as this Court shall deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff, by its counsel and pursuant to Federal Rule of Civil Procedure 38(b), hereby demands a trial by jury on all claims so triable in this action.


DATED this 24th of November, 2009.


The EQUAL RIGHTS CENTER,

By its attorneys,


Susan E. Huhta [Bar. No. 14547]
E. Elaine Gardner
Washington Lawyers' Committee
    for Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 319-1000
Facsimile:  (202) 319-1010
Susan_Huhta@washlaw.org
Elaine_Gardner@washlaw.org


John M. Faust
Robert P. Boxie, III
Vinson & Elkins L.L.P.
The Willard Office Building
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C.  20004
Telephone: (202) 639-6500
Facsimile:  (202) 639-6604
jfaust@velaw.com
rboxie@velaw.com

*Counsel for Plaintiffs*